38 N.Y.2d 897 (1976)
In the Matter of Nedra Anderson et al., Appellants,
v.
Board of Education of the City of Yonkers et al., Respondents.
Court of Appeals of the State of New York.
Argued January 8, 1976.
Decided February 17, 1976.
Eugene M. Kaufman for appellants.
Robert E. Sapir and Eugene J. Fox for respondents.
Robert D. Stone and Lawrence W. Reich for Ewald B. Nyquist, Commissioner of Education of the State of New York, amicus curiae.
Chief Judge BREITEL and Judges JASEN, JONES and WACHTLER concur in Per Curiam opinion; Judge GABRIELLI dissents and votes to reverse in a separate opinion in which Judges FUCHSBERG and COOKE concur.
*898 Per Curiam:
We affirm on the opinion of Presiding Justice FRANK A. GULOTTA at the Appellate Division, adding emphasis to two considerations which he identifies.
It is not disputed that prior to the 1972 amendment of section 3031 of the Education Law for sound reasons of educational policy the grant of tenure to any individual teacher depended on the concurrence of the superintendent of schools (generally representing the points of view of professional educators) and the board of education (representing the points of view of the community and those charged with superintendence and management of the educational affairs of the district). It would be unreasonable to conclude, in the absence of explicit provision, that legislation intended to expand the procedural rights of individual teachers with respect to determination of tenure would have been intended as well to reverse long-standing educational policy with regard to the substance of tenure-granting.
In strengthening the procedures to be followed in reaching tenure decisions, the introduction of a mandatory review (even without power to overturn) by the board of education of all decisions of the superintendent not to grant tenure was an addition of real substance. In the administrative as differentiated from the judicial setting, review by a higher authority of recommendations made to it may be of very real significance, especially where the official making the recommendations is himself subject, in evaluation of his performance of duty, to the ultimate control of the reviewing authority. Not only will the superintendent be called on to justify and defend his *899 decisions before the board; perhaps even more important, as a practical matter, will be the impact of the prospect of such review on the care and attention paid by the superintendent to his initial tenure recommendations. The amendment mandates review by the board in every instance and is not limited to cases in which objection has been raised by the individual teacher affected. Where teacher objection is made, the availability of his or her written response to the statement of reasons for the denial of tenure and notice to him or her of the board's prospective review of the superintendent's decision may be expected to contribute significantly to an effective and thorough consideration both of the particular tenure decision and of the superintendent's implementation of tenure policy in general.
GABRIELLI, J. (dissenting).
The majority concludes that even though the Legislature by section 3031 of the Education Law (as added by L 1972, ch 866) granted boards of education power to "review" determinations of superintendents of schools not to grant tenure to probationary teachers, the statute in fact gives boards the power only to recommend that superintendents reconsider their decisions. We are unable to agree with this conclusion.
Section 3031 of the Education Law provides:
"Notwithstanding any other provision of this chapter and except in cities having a population of one million or more, boards of education and boards of cooperative educational services shall review all recommendations not to appoint a person on tenure, and, teachers employed on probation by any school district or by any board of cooperative educational services, as to whom a recommendation is to be made that appointment on tenure not be granted or that their services be discontinued shall, at least thirty days prior to the board meeting at which such recommendation is to be considered, be notified of such intended recommendation and the date of the board meeting at which it is to be considered. Such teacher may, not later than twenty-one days prior to such meeting, request in writing that he be furnished with a written statement giving the reasons for such recommendation and within seven days thereafter such written statement shall be furnished. Such teacher may file a written response to such statement with the district clerk not later than seven days prior to the date of the board meeting.
"This section shall not be construed as modifying existing *900 law with respect to the rights of probationary teachers or the powers and duties of boards of education or boards of cooperative educational services, with respect to the discontinuance of services of teachers or appointments on tenure of teachers."
On April 30, 1973 some 10 months following the effective date of the statute, petitioners, probationary school teachers, were notified by respondent superintendent of schools that they would not be recommended for tenure and that their services would be terminated. In accordance with the provisions of section 3031, petitioners requested that they be furnished with "a written statement giving the reasons for such recommendation" and, following receipt of the superintendent's reply, each petitioner timely filed, as provided by statute, "a written response to such statement with the district clerk [of the school district]". It is especially important to note that on August 23, 1973, the board of education met to consider the recommendations for nontenure by the superintendent and the minutes of that meeting reveal that he told the board, in no uncertain terms "that the law clearly states that the Board cannot grant tenure unless the Superintendent recommends it", and, obviously basing its determination on this proscriptive advice, the board failed to "review" the recommendations.
Special Term held that to interpret section 3031 as respondents urged would render it nugatory and that the only rational construction of the statute is that it empowers boards of education to overrule recommendations not to grant tenure. Thus, Special Term annulled the board's determination and remitted the matter to the board for review as provided by the statute. A divided Appellate Division reversed and dismissed the petition. The majority of that court reasoned that since prior to the passage of section 3031 boards of education could not override negative tenure recommendations and since the second paragraph of section 3031 states that it shall not be considered as modifying prior law, the statute did not confer upon boards of education the power to review and reverse negative tenure recommendations. The majority further stated that the word "review" as used in the first paragraph of section 3031 simply gave boards the power to remand individual cases for reconsideration. The two dissenting Justices voted to affirm on the well-reasoned opinion at Special Term.
Section 3031 was intended to provide probationary teachers with procedural safeguards against unjust summary dismissal (NY Legis Ann, 1972, pp 111-112). However, as the majority *901 below and in this court interpret it, section 3031 provides notice and an opportunity to be heard before an entirely impotent tribunal. Such a result is patently unsound and, we think, not intended by its framers. Research has not disclosed the enactment of any statute granting individuals review and procedural rights before any body incapable of rendering any relief. It is certainly no answer to say that the board may remand a case for reconsideration for there exists no power, as the majority now holds, to grant relief where the recommendation is unjust, a result obviously in discord with the intended purpose of the legislation.
Moreover, section 3031 logically grants boards of education the power to reverse an erroneous determination by the superintendent of schools. Notably, the first sentence of section 3031 provides that "boards of education * * * shall review all recommendations not to appoint a person on tenure". (Italics supplied.) That this clause authorizes a school board to review, that is, "To re-examine judicially" (Black's Law Dictionary [4th ed], p 1483; Webster's Third New International Dictionary, p 1944) a superintendent's recommendation not to appoint a person to tenure, is stated with express clarity.
The majority, by its decision today, erases all meaning from the first sentence of the section, for it clashes with the general canon of construction that statutory language be accorded "its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes, § 94; see Cooper-Snell Co. v State of New York, 230 N.Y. 249) and we find no warrant for the conclusion that the word "review" means "recommend". Neither do we agree that the last paragraph of the statute was intended to render the procedural rights granted by the statute meaningless, as the majority now holds.
Accordingly, the order of the Appellate Division should be reversed and the determination made at Special Term reinstated.
Order affirmed, with costs.